UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 20-cr-40038-JPG-1 |
| JAMES F. DODD, | |
| Defendant. | |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant James F. Dodd's *pro se* motion for a sentence reduction for "extraordinary and compelling reasons" pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)) (Doc. 89).  The Government has responded (Doc. 96).

**I.    Compassionate Release**

The First Step Act expanded the sentence reduction provisions[1] of § 3582(c)(1)(A) by opening the door for a defendant to move for a reduction rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move.  First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020).  The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
>   (1) in any case—
>       (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a

---

[1] The reduction provisions are often referred to as "compassionate release" because historically the grounds for reduction have included the defendant's health and/or age as "extraordinary and compelling reasons" for immediate release.  Release was called "compassionate" because it was viewed as showing sympathy for an ailing or aged defendant.

> motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > (i) extraordinary and compelling reasons warrant such a reduction. . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

In exhausting administrative remedies, the defendant must have asserted the same or similar issues as grounds for relief in his request to the warden as he does in his motion for a sentence reduction. *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). Otherwise the warden is not equipped to properly consider the defendant's request. Additionally, the Court should give substantial weight to the BOP's analysis, if there is any, regarding "extraordinary and compelling reasons" in any particular case. *Gunn*, 980 F.3d 1180.

The final clause of § 3582(c)(1)(A) requires the Court to consider whether a sentence reduction would be consistent with U.S.S.G. § 1B1.13 (2023) (effective Nov. 1, 2023), the policy statement applicable to motions filed by the BOP Director or the defendant. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the community. U.S.S.G. § 1B1.13(a)(2).[2] The policy statement further defines "extraordinary and compelling reasons" to include, alone or in combination, as relevant for this case:

> **(1) Medical Circumstances of the Defendant.**—
> > **(A)** The defendant is suffering from a terminal illness (i.e., a serious and advanced

---

[2] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

illness with an end-of-life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
**(B)** The defendant is—
    **(i)** suffering from a serious physical or medical condition,
    **(ii)** suffering from a serious functional or cognitive impairment, or
    **(iii)** experiencing deteriorating physical or mental health because of the aging process,
that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
**(C)** The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.
**(D)** The defendant presents the following circumstances—
    **(i)** the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
    **(ii)** due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
    **(iii)** such risk cannot be adequately mitigated in a timely manner.

**(2) Age of the Defendant.**—The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

U.S.S.G. § 1B1.13(b) (2023).

The guideline further states that non-retroactive changes in the law may not be considered in determining whether an extraordinary and compelling reason exists, but they may be considered in determining the extent of a reduction where other extraordinary and compelling reasons exist.  U.S.S.G. § 1B1.13(c).  The guideline also provides that the rehabilitation of the defendant cannot, by itself, be an extraordinary and compelling reason, but it may be considered in connection with other reasons in determining whether and to what extent the Court should grant a reduction.  U.S.S.G. § 1B1.13(d).

Thus, for a defendant to be eligible for a § 3582(c)(1)(A) sentence reduction, he must have exhausted his administrative remedies,[3] and the Court must find that (1) extraordinary and compelling reasons for a reduction exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant a reduction.  18 U.S.C. § 3582(c)(1)(A).  The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden.  *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021); *Gunn*, 980 F.3d at 1180.  The Court must ensure that any reduction complies with U.S.S.G. § 1B1.13.

**II.     Analysis**

In August 2022, Dodd pled guilty to one count of threatening a federal law enforcement officer.  The Presentence Investigation Report ("PSR") recounted Dodd's threats to kill a United States Fish and Wildlife law enforcement officer who was trying to search his vehicle after smelling marihuana.  It also described Dodd's leading officers in a high-speed chase two years later when they attempted to arrest him, after which he again threatened the law enforcement officer during the arrest.  The PSR also described prior convictions for manslaughter and attempted child abduction and his possession of a firearm as a felon.  Nevertheless, he had accumulated no criminal history points.  The PSR further described Dodd's numerous health problems.

At sentencing in December 2022, the Court adopted the PSR, finding Dodd's total offense level was 13 and he was in criminal history category I, yielding a guideline sentencing range of 12 to 18 months in prison.  The Court sentenced him to a below guideline sentence of 5

---

[3] The exhaustion requirement is not jurisdictional and may be waived by the Government.  *Gunn*, 980 F.3d at 1179.

years on probation during which he would serve 10 weekends in a county jail and 6 months of home confinement. The Court entered the below-guideline sentence due to Dodd's age and physical condition.

In August 2023, the Court revoked Dodd's probation after finding he committed the offense of domestic battery on two occasions in violation of his probation condition not to violate any state law. Those two occasions were within a month of his release from home confinement. The Court sentenced him to serve 24 months in prison, a sentence he is now serving in the Federal Correctional Center (Medium) at Forrest City, Arkansas. Dodd's projected release date is February 25, 2025. See BOP, Find an Inmate, https://www.bop.gov/inmateloc/ (visited July 25, 2024).

Less than three months after the Court revoked his probation, Dodd filed the pending motion for compassionate release. At the time he filed the motion, he was housed in a local jail where he thought he could not get the medical care he needed. In the motion, he asks the Court to release him so he can access medical care for his numerous health issues including ▮▮▮▮▮▮▮▮▮▮▮▮. He also notes that he is 78 years old. He states that he is not a flight risk nor a danger to the community. If he is released, he would like to complete his master's degree at Southern Illinois University and reactivate a non-profit organization he founded decades ago to help ex-offenders.

In response, the Government asserts that Dodd did not exhaust his administrative remedies before filing the motion, has not shown medical circumstances that satisfy U.S.S.G. § 1B1.13(b)(1), and has not demonstrated release is appropriate in light of the factors in 18 U.S.C. § 3553(a). The Government notes that Dodd has not attached any medical records about

his condition and, at the time of the Government's response, remained in a local jail.

### A. Exhaustion of Administrative Remedies

As noted above, 18 U.S.C. § 3582(c)(1)(A) requires a defendant to "fully exhaust[] all administrative rights to appeal *a failure of the Bureau of Prisons to bring a motion* on the defendant's behalf or the lapse of 30 days from the *receipt of such a request by the warden* of the defendant's facility," before filing a motion for release with the Court. The purpose of this requirement is "to provide the Bureau with the information necessary to move for release on a defendant's behalf." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). The plain language of this statute requires a defendant to either (1) ask the BOP to bring a motion to release him under 18 U.S.C. § 3582(c)(1)(A) and then appeal all the way up the administrative chain (perhaps through the Administrative Remedy Program using the BP-8 through -11 series of forms) or (2) ask the warden of the defendant's facility to have the BOP bring such a motion and then wait 30 days.

Requiring a defendant to ask his jailer to file a motion to release him is contrary to the plain language of the statute. It speaks only of a request to the "warden" to have the "Bureau of Prisons" move for a defendant's release on the defendant's behalf. The language simply does not require a jail inmate to ask his jail custodian—in this district, usually a Sheriff or a Jail Administrator—for anything.

Indeed, a defendant who is not in a BOP facility cannot pursue either avenue of exhaustion listed in the statute. He does not have access to the BOP's Administrative Remedy Program, 28 C.F.R. § 542.10-.19 since he is not in BOP custody. He also is not in the custody of a warden of a BOP facility who can receive requests for the BOP to release the defendant. Thus, a convicted defendant sitting in jail has no way of exhausting.

6

Ordinarily, where remedies are not "available," a plaintiff need not exhaust them. For example, the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides, "No action shall be brought with respect to prison conditions under section 1983 . . . . until such administrative remedies *as are available* are exhausted." There, courts have stuck to the text and held that if remedies are not "available," a defendant need not exhaust them before filing suit. *See, e.g., Thomas v. Reece*, 787 F.3d 845, 847-48 (7th Cir. 2015) (remedy not available, so need not be exhausted, where prison officials prevent inmate from using it).

In the text of 18 U.S.C. § 3582(c)(1)(A) there is no requirement that the administrative remedy be "available" before it can be exhausted. Clearly Congress knew how to include such a condition in the text of the First Step Act of 2018 if it had wanted to; it had done so twenty-two years earlier when it enacted the PLRA. So under the plain language of § 3582(c)(1)(A), the BOP must have refused to file a motion for release or the defendant must have made a request to a BOP warden before he can file his own motion for compassionate release.

Lest this seem too harsh, remember that before December 2018, when the First Step Act was enacted, defendants were not allowed to file motions for compassionate release at all. When Congress made such motions available to defendants, it aimed to increase the use of compassionate release, but it also required the opportunity for the BOP to have input into the decision—input to which the Court must give substantial weight. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). The BOP's assessment was important because BOP administrators can incorporate their years of corrections experience into their decisions. In addition, BOP administrators are those most likely to understand a defendant's reasons for compassionate release and to assess, in light of the prison operations at the defendant's designated institution, whether those needs are extraordinary and compelling—in the regular

7

sense of those words—reasons for release.  These are judgments that jail administrators are unlikely able to be able to make with respect to BOP correctional operations.  So in light of the fact that, until recently, defendants could not file their own motions for compassionate release, it is reasonable to construe § 3582(c)(1)(A) to at least require a defendant to be in physical BOP custody before filing the motion so that the BOP has an opportunity to opine on the defendant's request for release.

To the extent a defendant experiences extraordinary and compelling circumstances warranting release from a jail prior to being placed in BOP's physical custody, those circumstances are usually only temporary pending transfer to a BOP facility.  And to the extent the jail environment is not providing for the defendant's needs, he may file a civil lawsuit under 42 U.S.C. § 1983 seeking a temporary restraining order or preliminary injunction after exhausting his jail administrative remedies.

Dodd's motion was filed too early.  He did not wait for his designation and transfer to a BOP institution and then ask his BOP warden for compassionate release.  He has not exhausted his administrative remedies as required by § 3582(c)(1)(A), and there is no exception for unavailable remedies.  Therefore, the Court denies his motion for failure to exhaust administrative remedies.

B.    Extraordinary and Compelling Reasons

Even had Dodd exhausted his remedies, the Court would deny his motion because he has not established extraordinary and compelling reasons for release.  Granted, Dodd has serious health issues that a jail may not be able to address completely and properly.  However, he is no longer in jail.  He is in a BOP facility with the ability to treat him with its local medical staff, send him for care to medical professionals outside the prison, or seek a transfer to another

institution with appropriate medical personnel.  He has not presented any medical evidence of the extent of his medical conditions and how they impact him and his ability to care for himself. Nor has he even advanced the argument that BOP medical resources are insufficient to tend to his medical conditions.  In the absence of any evidence of the extent of Dodd's medical needs or that BOP medical resources cannot effectively manage them, the Court cannot find his health problems are an extraordinary and compelling reason for release from BOP custody.[4]

Dodd may also be invoking the policy statement regarding age.  He satisfies the first policy statement criteria—he is over 65—but he has not shown a serious deterioration in his physical or mental condition because of the aging process.  Further, at the time of his motion, he had not served 75 percent of his 2-year revocation sentence.

Even in combination, his medical condition and his age do not amount to extraordinary and compelling reasons for release.

C.      § 3553(a) Factors

Even if Dodd had exhausted his administrative remedies and established extraordinary and compelling reasons for release, the Court would not release him in light of the § 3553(a) factors.  Dodd is still a danger to the safety of others in the community.

The Court's analysis of the § 3553(a) factors at the sentencing hearing and probation revocation hearing continue to apply now.  Although not having many criminal history points, he had a criminal history of threats, violence, and disregard for rules.  And his offense of conviction was for threatening to kill a law enforcement officer.  Astoundingly, after the Court gave him a break by sentencing him on his original crime to probation rather than imprisonment, he

---

[4] To the extent the Sentencing Commission's authority to define "extraordinary and compelling" reasons may be in doubt, the Court draws the same conclusion based solely on the statute's text.

9

continued his threatening, violent, and reckless behavior in a blink of an eye after being released from home confinement by twice committing domestic battery by causing bodily harm.  And at age 77.  Neither his current health conditions nor his age has made him any safer to the community or more inclined to obey rules, as his post-sentencing failure to comply with the law and with his probation conditions amply demonstrates.  The Court firmly believes that Dodd's current 2-year sentence (reduced by any credits to which he is entitled) is still necessary to protect the public from his further crimes.  Anything less would undermine the gravity of his offense and would not promote respect for the law.

All in all, Dodd has not exhausted his administrative remedied or convinced the Court that extraordinary and compelling reasons for release exist and that the § 3553(a) factors weigh in favor of his release.

### III.  Conclusion

For all of these reasons, the Court **DENIES** the defendant's motion for a sentence reduction pursuant to § 3582(c)(1)(A) (Doc. 89).

**IT IS SO ORDERED.**
**DATED:  July 26, 2024**

                                                    s/ J. Phil Gilbert
                                                  **J. PHIL GILBERT**
                                                  **DISTRICT JUDGE**